OPINION
A. D. Armstrong is appealing the decision of the Montgomery County Common Pleas Court revoking his probation.
On September 17, 1998, Armstrong was convicted for cocaine possession while on parole for a previous aggravated burglary conviction. He was sentenced to five years of community control. The Adult Probation Department designated Brian Townsend as Armstrong's probation officer. Armstrong was required to submit to drug use monitoring, make weekly reports to Townsend, participate in an outpatient drug treatment program, and pay restitution and probation fees.
Armstrong was arrested on February 16, 1999, for a parole violation, aggravated robbery, resisting arrest, and carrying concealed weapon. Townsend filed a notice of probation violation on March 19, 1999, for four of Armstrong's conditions of probation:
 You violated Rule #1, "You shall refrain from violation of any law (Federal, State, County, and City). You shall get in touch immediately with your Probation Officer if arrested or questioned by a law-enforcement officer." You were arrested on February 16, 1999 for Parole Violation, Aggravated Robbery * * *, Resisting Arrest, Carrying Concealed Weapons PR or Loaded, and Parole Violation {sic} * * *.
 You violated Rule #2, "You shall never purchase, own, possess, use, or have under your control, a deadly weapon or firearm. You shall be subject to periodic searches without warrant or Court order to determine compliance with this condition of probation." You violated this rule when you were arrested for Carrying Concealed Weapons PR or Loaded.
 You violated Rule #5, "You shall report at such time and place as directed by your Probation Officer. If your Probation Officer is unavailable, you shall report to the Officer-of-the-Day, the Team Supervisor, or the Division Manager." You violated this when you failed to report on January 15, 1999 or January 25, 1999.
 You violated Rule #7, "You shall accomplish all case plan objectives which are now and will be set for you throughout your probation period." You did not pay your court costs or probation fee, submit urine test {sic} twice a week, or abide by the rules of the Adult Parole Authority.
After a hearing on Townsend's notice, which we will discuss in the first assignment of error, the trial court revoked Armstrong's probation and imposed the previously suspended 12 month sentence on the possession charge. Armstrong now appeals, bringing to us three assignments of error.
 I., Defendant-Appellant was unfairly prejudiced in his probation and parole when Brian Townsend, Lori Bonner, the Adult Parole Authority and the Adult Probation Department failed in their duties to Defendant-Appellant and {sic} to the court.
We note that this assignment of error fails to allege any error in the trial court's proceedings. Because Armstrong disputes the validity of the State's evidence, we will interpret this assignment of error as a claim that the revocation was against the manifest weight of the evidence. In this regard, Armstrong argues that the Adult Parole Authority and the Adult Probation Department were responsible for his failure to abide by the terms of his probation, thus the revocation was against the manifest weight of the evidence. We disagree.
As we recently stated in State v. Jones (March 31, 2000), Miami App. No. 99 CA 38, unreported:
 [P]robation revocation is proper when the State presents "evidence of a substantial nature" supporting revocation. State v. Bleasdale (1990), 69 Ohio App.3d 68, 72; State v. Scott (1982), 6 Ohio App.3d 39, 42; State v. Mingua (1974), 42 Ohio App.2d 35, 40, 71 O.O.2d 234, 237. Furthermore, the trial court's revocation decision will not be reversed absent an abuse of discretion. State v. Theisen (1957), 167 Ohio St. 119, 124-125; Bleasdale, supra, at 72; Scott, supra, at 42. The phrase "abuse of discretion" connotes more than an error of law or judgment. It implies that the trial court's action was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
In this case, Armstrong was required to meet with his probation officer, submit to two urine tests a week, pay his court costs and probation fees, and refrain from violating any laws. At the hearing, Townsend testified that Armstrong had failed to comply with any of these conditions. According to Townsend, the Adult Parole Authority placed Armstrong on house arrest upon his release from jail in January, 1999. Townsend had scheduled a meeting with Armstrong on January 15, 1999, but Armstrong failed to appear. Townsend called to reschedule the meeting, but Armstrong was reluctant because he did not want to violate the conditions of his house arrest. Townsend explained to Armstrong the conditions and rules of his house arrest and his probation, and told Armstrong that he would contact Armstrong's parole officer, Lori Bonner. Townsend recommended that Armstrong inform pretrial services of their next mandatory meeting, scheduled for January 25, 1999. Townsend contacted Bonner prior to the January 25th meeting and made arrangements for Armstrong to fulfill the probation conditions while on house arrest, but Townsend was unable to contact Armstrong with the information. Armstrong failed to appear at the January 25th meeting, and thereafter did not initiate contact with Townsend. Furthermore, because Townsend was to discuss payment options and work privileges at their meeting, Armstrong had not made any payments on the restitution or the fees.
Additionally, Armstrong had had no contact with Bonner after his release from jail. In accordance with the house arrest conditions, Bonner had visited Armstrong's home, but was told that Armstrong was not there. Although Armstrong claims he was asleep in the back room, and was later informed of Bonner's visit, he admitted to making no effort to contact Bonner or Townsend. At the conclusion of the hearing, Armstrong conceded that he had not fulfilled any probation requirements except to "stay out of the way."
Conversely, Armstrong argues that he was not informed of the terms of his house arrest, his parole, or his probation. He stated at the hearing that he believed he was confined to his home while on house arrest, therefore he was not responsible for his absence at the meetings and the urine drops. As we mentioned earlier, however, evidence exists that Townsend had explained that the meetings were mandatory and his attendance would not interfere with his house arrest.
Despite Armstrong's testimony that he had no control over failing to complete his probation conditions, we find that evidence exists that he willfully violated these conditions. It was for the trial court to determine the weight of the evidence and the credibility of the witnesses. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus, 39 O.O.2d 366, paragraph one of the syllabus. Accordingly, we conclude that the trial court's judgment was not against the manifest weight of the evidence.
Armstrong's first assignment of error is overruled.
 II. The trial court failed to issue a written statement as to the evidence relied upon and reasons for revoking probation and, thus, violated Defendant-Appellant's constitutional right of due process.
Armstrong argues that his due process rights were violated by the trial court's failure to state the reasons for his revocation. The United States Supreme Court has held that to satisfy due process requirements, a probation revocation hearing must contain:
 "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses * * *; (e) a `neutral and detached' hearing body * * *; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking [probation or] parole."
(Emphasis added.) Gagnon v. Scarpelli (1973), 411 U.S. 778, 786; quoting Morrissey v. Brewer (1972), 408 U.S. 471, 489. The Ohio Supreme Court has found that a trial court's statement may be oral, as long as it "sufficiently inform[s] the appellant of the reasons for which his probation [is] being revoked, while also providing an adequate record for review on appeal." State v.Delaney (1984), 11 Ohio St.3d 231, 235.
In this case, the trial court's written findings consist of one sentence in its termination entry: "On May 26, 1999, the defendant herein appeared in open Court with Counsel for having violated the conditions of his/her community control granted on SEPTEMBER 30, 1999, and having been convicted of the offense(s) of POSSESSION OF COCAINE (F5)." (Docket 42.) Similarly, at the hearing the trial court simply stated "Having listened to the testimony and reviewed everything that has been reported, the Court finds that the defendant has violated his probation." (Tr. 33.) Neither statement is "sufficient" under Gagnon, supra, orDelaney, supra, because they provide no reasons for the revocation.
As such, we must sustain Armstrong's assignment of error and remand the case to the trial court for a determination of such factual findings.
 III. The trial court denied Appellant due process and equal protection of law by revoking his probation due to, inter alia, his failure to pay costs and fees without first making a determination that he was able to pay.
Because the trial court failed to state its reasons for the revocation, this assignment of error is premature. Armstrong's third assignment of error is without merit.
Based on the foregoing, Armstrong's first and third assignments of error are not well taken and are overruled. His second assignment of error is sustained, and the judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 ______________________________ FREDERICK N. YOUNG, J.
WOLFF, J. and FAIN, J., concur.