OPINION
This appeal emanates from the Lake County Court of Common Pleas. Appellant, Barbara Nagle, appeals the judgment entry ordering the revocation of her probation.
On October 26, 1995, appellant was indicted on two counts of passing bad checks, felonies of the fourth degree, in violation of R.C. 2913.11; and two counts of forgery, felonies of the fourth degree, in violation of R.C. 2913.31. On January 11, 1996, appellant entered a written and oral plea of guilty to both counts of passing bad checks. Appellee, the state of Ohio, moved to dismiss the two counts of forgery, which the trial court granted. The matter was then referred to the Adult Probation Department for a presentence report and investigation. On February 14, 1996, appellant received a suspended sentence of a definite term of incarceration of one and one-half years at the Ohio State Reformatory and was placed on two years of probation provided that she: (1) serve sixty days under electronically monitored house arrest, (2) submit to random urine samples, (3) have no involvement with drugs or alcohol while on probation, (4) attend counseling once a week, (5) make restitution of $2,525, (6) maintain full employment, (7) obtain her General Equivalency Diploma ("GED"), and (8) complete two hundred hours of volunteer work.
On July 17, 1996, appellee filed a motion to terminate appellant's probation because she violated the term of her probation requiring her to report to her probation officer. On August 1, 1996, appellant waived her right to a probable cause hearing, and on August 21, 1996, after appellant entered a plea of guilty to violating her probation, the trial court sentenced her to serve thirty days in jail, with credit for time already served, and extended her probation for one year.
In a judgment entry dated December 10, 1998, the trial court ordered appellant to be arrested after being notified by the Adult Probation Department that she had violated a condition of her community control. Moreover, on December 15, 1998, appellee filed another motion to terminate appellant's probation because she failed to report to her probation officer, pay court costs, complete community service, and obtain her GED. On January 25, 1999, appellant waived her right to a probable cause hearing and entered a plea of guilty to the charge of violating the terms of her probation. On February 19, 1999, the trial court sentenced appellant to serve sixty days in jail with credit for thirty-six days already served. Execution of the remaining thirty days was suspended if she successfully completed the community alternative to jail program, and her probation was extended for another year, making it a total of four years.
On March 31, 1999, appellee filed a third motion to terminate probation because appellant had failed to report to her probation officer. On April 19, 1999, appellant waived her right to a probable cause hearing, but exercised her right to a final hearing.
At the final hearing on April 28, 1999, appellant's probation officer, Evelyn Porter ("Porter"), testified. She related that appellant had signed a document that informed her of the terms of her probation. Specifically, Porter mentioned rule number two to appellant, which dealt with reporting to your probation officer. Porter revealed that she verbally advised appellant of this rule before appellant signed the document and that appellant understood it. Porter also explained that she verbally informed appellant that she was to report on a weekly basis. Nonetheless, Porter recalled that appellant violated that rule several times.
According to Porter, on February 18, 1999, she told appellant to contact her upon appellant's release from jail. When appellant was released on March 3, 1999, she failed to contact Porter. Thereafter, on March 18, 1999, Porter spoke with Lorraine from the Forbes House, a shelter for battered women where appellant was staying, and told Lorraine to have appellant contact her. However, on March 22, 1999, Porter received a fax of a copy of a letter sent to appellant from an employee of the Forbes House, which stated that if appellant did not provide a work schedule and verification that she had contacted her probation officer by March 23, 1999, at 4:00 p.m., her stay at the Forbes House would be terminated.[1] Yet, Porter never heard from appellant.
Appellant testified in her behalf that at the time of the probation violation, she was having problems with her husband. He had been arrested in February 1999, for beating and kicking their son. She also stated that Porter never gave her anything in writing informing her as to when and how often she was to report for probation. However, she admitted that Porter verbally notified her that she was to report every Monday. In addition, appellant related that she had followed the other terms of her probation by attending the meetings, going for counseling, seeing someone for her GED, being employed, and paying her fine. The only condition she had violated was reporting to Porter. Appellant explained that this violation of her probation was different than the other violations because this time she had been taking her mother to treatments since her mother was dying of cancer. However, she never seemed to be able to call Porter to tell her these things.
On cross-examination, appellant admitted that she had had problems in the past reporting to her probation officer. Even though she knew she had to report on a weekly basis, she thought that she had to begin reporting after she had completed her stay at the Forbes House. Furthermore, she claimed that she never received a letter informing her that her stay at the Forbes House had been terminated.
In a judgment entry dated May 4, 1999, the trial court found that appellant was a probation violator and sentenced her to a definite term of incarceration of eighteen months on each of the counts of passing bad checks. The sentences were to run concurrently and appellant was to receive credit for ninety-six days already served. Appellant timely filed the instant appeal and now asserts the following as error:
 "The [t]rial [c]ourt erred in revoking [a]ppellant's probation where the probation revocation hearing conducted violated [a]ppellant's right to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution."
In her sole assignment of error, appellant contends that the trial court erred in revoking her probation because the revocation hearing violated her right to due process.
Under this assignment, appellant presents two sub-arguments for our review. First, she claims that the trial court erred by allowing written hearsay evidence to be presented at the hearing without proper authentication. Second, she alleges that the trial court erred by not articulating a proper finding as to the reasons for revoking probation.
Evid.R. 101(C) specifically states that the Ohio Rules of Evidence do not apply in:
 "(3) Miscellaneous criminal proceedings. Proceedings for extradition or rendition of fugitives; sentencing; granting or revoking probation; issuance of warrants for arrest, criminal summonses and search warrants; and proceedings with respect to release on bail or otherwise." (Emphasis added.) See, also, Columbus v. Bickel (1991), 77 Ohio App.3d 26, 36; State v. Stockdale (Sept. 26, 1997), Lake App. No. 96-L-172, unreported, at 5, fn. 2.
 Hence, it is apparent that hearsay rules do not generally apply at probation revocation hearings. State v. Setler
(Sept. 25, 1998), Lake App. No. 97-L-214, unreported, at 7. Obviously, this has the effect of easing the admissibility of evidence at such proceedings. The rationale for this exception is that a trial court should be able to consider any reliable and relevant evidence indicating whether the probationer has violated the terms of probation since a probation revocation hearing is an informal proceeding, not a criminal trial. Bickel, 77 Ohio App.3d at 36, citing State v. Miller (1975), 42 Ohio St.2d 102, 106; see, also, State v. Hylton (1991), 75 Ohio App.3d 778, 781; Stockdale, supra, unreported, at 5.
However, as this court has previously held, a defendant does have some rights of confrontation and cross-examination pursuant to the United States Supreme Court decisions in Morrissey v.Brewer (1972), 408 U.S. 471 and Gagnon v. Scarpelli (1973),411 U.S. 778. State v. Soke (Aug. 11, 1989), Lake App. No. 88-L-13-133, unreported, at 4-5. This court also held that there is no abuse of discretion when both hearsay and nonhearsay evidence are relied upon to revoke probation, especially when the nonhearsay evidence is both significant and probative. Id. at 6.
In the present case, there was significant nonhearsay evidence admitted at the hearing to support the trial court's decision. Appellant's probation officer, Porter, testified that appellant had failed to report to her probation as required. Additionally, appellant also admitted that she knew she had to meet with Porter every Monday. All of this evidence was both significant and probative.
Moreover, Porter testified that she received a fax of appellant's letter from the Forbes House, which stated that appellant's stay would be terminated if she did not provide a work schedule and proof that she had contacted Porter. Appellant's first argument lacks merit.
Under appellant's second argument, she claims that the trial court erred by not expressing a proper finding concerning its reasons for revoking appellant's probation.
A probation revocation hearing is not part of the formal prosecution of a criminal defendant. Hylton,75 Ohio App.3d at 781; Stockdale, supra, unreported, at 5. Rather, it is "`an informal hearing structured to assure that the finding of a * * * (probation) violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the * * * (probationer's) behavior." Hylton,75 Ohio App.3d at 781, quoting Morrissey, 408 U.S. at 484. The primary purpose of such a hearing is to conduct an inquiry into whether the probationer's conduct comported with the terms of the court-ordered probation.
At a probation revocation hearing, the burden is on the state to prove that the probationer violated one or more of the terms of probation. Setler, supra, unreported, at 6. The quantum of evidence the state must adduce is not beyond a reasonable doubt; rather, there need only be evidence of a substantial nature to find revocation justified. State v. Scott (1982), 6 Ohio App.3d 39,41; State v. Mingua (1974), 42 Ohio App.2d 35, 40; State v.Gomez (Feb. 18, 1994), Lake App. No. 93-L-080, unreported, at 5;Soke, supra, unreported, at 8. Hence, the applicable burden of proof to support the revocation of probation is not as stringent as is required to obtain the original criminal conviction.
As for what constitutes evidence of a substantial nature, this court has held that a trial court should apply a preponderance of evidence standard when deciding whether to revoke probation. Stockdale, supra, unreported, at 6. In the context of a revocation hearing, "the state only has to introduce evidence tending to show that it was more probable than not that the probationer violated the terms of his or her probation." Id.
The decision to revoke probation rests within the sound discretion of the trial court. State v. McKnight (1983),10 Ohio App.3d 312, 313; Stockdale, supra, unreported, at 6. Unless there is an abuse of discretion, a reviewing court will not reverse the trial court's decision. An abuse of discretion implies more than an error of law or judgment; it connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Because a revocation hearing is an informal proceeding, the trial court could consider all reliable and relevant evidence to determine whether appellant violated the terms of his probation. It was for the trial court to decide the weight and credibility to be accorded the testimony of Porter and appellant.
In the case at bar, a review of the transcript reveals that appellee presented evidence of a substantial nature which was sufficient to justify revocation. Specifically, through the testimony of Porter, appellant's probation officer, appellee established that appellant did not report to her officer when she was required to do so and violated one of the terms of her probation. Further, she had had at least two past violations.
Upon reviewing the record, we conclude that the necessary quantum of evidence was adduced at the hearing to warrant the revocation of appellant's probation. Here, the probation violation was one over which appellant had complete control. Porter's testimony was sufficient to prove by a preponderance of the evidence that appellant violated a term of her probation. Even though appellant had an explanation as to why she failed to report to Porter upon her release from jail, the fact remains that her actions alone resulted in a probationary infraction. Because there was evidence of a substantial nature that appellant did not abide by the conditions of her probation, the trial court did not abuse its discretion by revoking her probation.
Under her second argument, appellant also avers that she was denied due process because she was not provided with written notice of the complaint against her.
The procedural due process rights of a probationer in a probation revocation hearing are similar to those of a parolee in a parole revocation proceeding. Gagnon, 411 U.S. at 782. InGagnon, the court identified six due process requirements that apply to the final revocation hearing:
 "`(a) written notice of the claimed violations of (probation) * * *; (b) disclosure to the (probationer) * * * of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses * * *; (e) a "neutral and detached" hearing body * * *; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation) * * *.'" Id. at 786, quoting Morrissey, 408 U.S. at 489.
In the present case, appellant claims that she was denied due process because she was not given written notice of her violation and the trial court failed to provide a written finding. However, she received written notice of her probation violation in appellee's motion to revoke probation. In State v.Bleasdale (1990), 69 Ohio App.3d 68, 70, this court addressed the issue of whether failure to provide written notice of an alleged probation infraction violated a defendant's due process rights. This court held that this was harmless error when a defendant received both a preliminary hearing and final hearing in a manner suggesting that the defendant was not prejudiced by the lack of formal written notice of the violation. Id. Further, inBleasdale, the defendant failed to demonstrate any prejudice as a result of the lack of written notice. Id.
Similarly, in the case at bar, assuming that there was no written notice given to appellant, she has failed to demonstrate any prejudice resulting from the alleged failure.
Appellant's contention that she was not provided with a written finding is not well-founded. In its May 4, 1999, judgment entry, the trial court stated that:
 "Upon hearing the evidence presented at the final hearing, the Court finds defendant `Guilty' to the charge of violating the terms of her probation.
 "[Appellant] was found to be a probation violator for failing to report to her probation officer as ordered."
 In State v. Occhipinti (May 14, 1999), Lake App. No. 98-L-061, unreported, at 18, this court held that a similar "pronouncement by the trial court was sufficient to satisfy the final requirement of Gagnon * * *." Appellant's second argument lacks merit.
For the foregoing reasons, appellant's assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
 __________________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., NADER, J., concur.
[1] At the conclusion of the hearing, appellant opposed the introduction of appellee's exhibit number two, which was a copy of this letter, because appellant alleged that she never received it, but the court allowed the exhibit to be introduced.