[Cite as *State v. Solomon*, 2012-Ohio-4884.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-7 |
| WILLIAM SOLOMON, III | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Morrow County
Court of Common Pleas, Case No.
2008CR-0132

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      October 18, 2012

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

CHARLES S. HOWLAND      DENNIS PUSATERI
JOCELYN STEFANCIN      250 East Broad Street, Ste. 1400
60 East High Street      Columbus, OH 43215
Mt. Gilead, OH 43338

*Gwin, J.*

{¶1} Defendant-appellant, William R. Solomon, III ["Solomon"] appeals the revocation of his community control and imposition of a five-year prison term following an evidentiary hearing in the Morrow County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

*FACTS AND PROCEDURAL HISTORY*

{¶2} Solomon was indicted by the Morrow County Grand Jury for one count of Domestic Violence. Because of prior convictions for domestic violence, the crime was a felony of the third degree. On May 9, 2008, Solomon pled guilty to the indictment. He was placed on community control sanctions for a period of five years. The terms and conditions of supervision included standard conditions and 11 special conditions of' supervision.

{¶3} A motion to revoke community control sanctions was filed on December 10, 2010. The motion alleged that Solomon violated community control by (1) committing a new crime (Solomon was indicted for Domestic Violence on August 26, 2010), (2) failing to report to his probation officer, and (3) consuming alcohol.

{¶4} On December 23, 2010, the court held a probable cause hearing. The court found Solomon to be indigent, continued the matter, and ordered that an attorney be appointed to represent Solomon.

{¶5} On May 3, 2011, Solomon acting pro se filed a motion to withdraw his former plea. The state filed a response to the motion on May 19, 2011. The motion was denied by Judgment Entry filed May 27, 2011.

{¶6} On September 30, 2011, Solomon with counsel waived his right to a probable cause hearing. The trial court set October 21, 2011 for an evidentiary hearing on the motion to revoke Solomon's community control sanctions. On October 21, 2011, the trial court granted Solomon's motion for a continuance and rescheduled the evidentiary hearing for November 16, 2011. On that date, the trial court re-scheduled the hearing because Solomon's attorney was ill. The court scheduled the matter for a hearing on November 22, 2011.

{¶7} At the hearing evidence was presented that Solomon complied with all 28 terms and conditions of community control between the time of his placement on May 8, 2009 and his failure to report to his probation officer on August 9, 2010.

{¶8} Solomon testified that his failure to report was during a time when his medical card had expired, he was trying to ration his psychotropic medications by taking one-third of his daily dosage. He claimed he was bedridden and incapacitated with anxiety that resulted in a hospitalization.

{¶9} Solomon testified that he and his wife called in to his probation officer when he was unable to make post-August 9 meetings. He also testified that on two previous occasions he was permitted to call in rather than report because of health issues. One was when he was recovering from eye surgery, the other when he was suffering with what was apparently H1N1 viral influenza.

{¶10} Solomon's probation officer was a career deputy sheriff and police officer. He testified that call-ins were never permitted because all his probationers are required to report in person, and essentially took the position that "the rules are the rules." He did not know "off the top of his head" the frequency with which he made Solomon provide

urine screens for drugs and alcohol. The probation officer further testified that Solomon did not notify him that he was charged with a new offense. Solomon, acting as his own attorney, was acquitted after a jury trial of the new charge.

{¶11} As to the charge of consumption of alcohol, the probation officer testified that at some prior court proceeding Solomon had told him he had relapsed and been drinking. Solomon testified that he told the probation officer he had "was self-medicating" and was drinking non-alcoholic beer.

{¶12} At the conclusion of the hearing, the court found that Solomon had violated the terms and conditions of his community control. The court imposed the previously suspended sentence of five years in prison.

*ASSIGNMENTS OF ERROR*

{¶13} Solomon raises one assignment of error,

{¶14} "I. THE TRIAL COURT ERRED BY REVOKING DEFENDANT-APPELLANT'S COMMUNITY CONTROL, BY HOLDING A PROBATIONER WITH MULTIPLE AND SERIOUS MENTAL ILLNESSES TO THE SAME STANDARDS OF UNDERSTANDING, CAPABILITY AND COMPLIANCE THAT WOULD REASONABLY APPLY TO A MENTALLY HEALTHY PERSON, BY EXPECTING SUCH PERSON TO RESPOND TO THE SAME SUPERVISION METHODS AND STANDARDS AS WOULD A MENTALLY HEALTHY PERSON, AND BY FAILING TO CONDUCT REASONABLE INQUIRY INTO WHETHER ANY VIOLATIONS OF COMMUNITY CONTROL WERE WILLFUL, ALL IN VIOLATION OF THE DUE PROCESS AND EQUAL PROTECTION PROVISIONS OF THE UNITED STATES AND OHIO CONSTITUTIONS."

*Analysis*

Community control sanctions essentially replace the concept of "probation" in Ohio's criminal justice system. *See generally Griffin & Katz, Ohio Felony Sentencing Law* 394-396, §§ S.2-T5.4 (1988 Ed.). Although similar in their operational effect, community control sanctions differ a great deal from probation in many ways including the manner by which violations of those controls are handled. Judge Griffin and Professor Katz explain this difference in their treatise as follows:

"Prior to 1995 Senate Bill 2, it was quite appropriate for a judge to treat probation as a contract for leniency. The judge imposed but suspended a prison sentence-the presumed proper punishment for the crime of conviction. Probation was conditioned on good behavior. Violation of that probation was a breach of contract with the sentencing judge. For the breach, the judge could properly impose the suspended prison sentence-even for the most trivial violation of probation.

"Under Senate Bill 2, a sentence to a community control sanction is not a contract for good behavior that automatically is punishable by prison if it is violated. The community control sanction that is imposed is the appropriate sentence for the crime of conviction. That sanction was the one that should have adequately punished the offender for his misconduct and should have adequately protected the public from future crime by the offender. The sentence should have been reasonably calculated to achieve those overriding purposes. Just as the Parole Board can no

longer extend a sentence as a revised punishment for the felony which sent the offender to the penitentiary, *so the court which imposes punishment for a violation of a community control sanction cannot punish the offender again for the crime that gave rise to the community control sanction.* The sanction for the violation of the community control sanction should be the sanction that is commensurate with the seriousness of the violation and adequately protects the public from future crime by the offender and others." *Id.* at 426-427, § T5.36 (Emphasis added.) (Footnotes deleted.).

*State v. Gilliam* (June 10, 1999), 4th Dist. No. 98CA30, 1999 WL 740248, at *3(June 10, 1999).

{¶15} A community control revocation hearing is not a criminal trial. *State v. White,* 5th Dist. No.2009–CA–00111, 2009–Ohio–6447. The state therefore need not establish a community control violation by proof beyond a reasonable doubt. *White, supra* at ¶ 13; *State v. Ritenour,* 5th Dist. No.2006AP010002, 2006–Ohio–4744 at ¶ 36; *State v. Spencer,* 5th Dist. No. 2005–CA–15, 2006–Ohio–5543 at ¶ 12; *State v. Henry,* 5th Dist.. No. 2007–CA–0047, 2008–Ohio–2474. The Supreme Court of Ohio has recently confirmed that when reviewing the manifest weight of the evidence, an appellate court conducts the same analysis in both criminal and civil cases. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 12.

{¶16} The right to continue on community control depends on compliance with community control conditions and "is a matter resting within the sound discretion of the court." *State v. Garrett,* 5th Dist. No. 2010 CA 00210, 2011–Ohio–691 at ¶ 13; *State v.*

*Schlecht,* 2nd Dist. No. 2003–CA–3, 2003–Ohio–5336, citing *State v. Johnson*, 2nd Dist. No. 17420, 2001 WL 561312(May 25, 2001).

**{¶17}** Once a court finds a defendant violated the terms of probation, the decision whether to revoke probation lies within the court's sound discretion. *State v. White,* supra at ¶ 14. (Citing *State v. Ritenour,* supra at ¶ 37). (Internal Citations omitted). Thus, a reviewing court will not reverse a trial court's decision absent an abuse of discretion. *State v. Sheets*, 112 Ohio App.3d 1, 677 N.E.2d 818(1996); *State v. Ritenour,* supra at ¶ 37. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Maurer*, 15 Ohio St.3d 239, 253, 473 N.E.2d 768(1984).

**{¶18}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183. Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846(1988).

**{¶19}** Solomon argues, in essence, that his mental health problems constitute a mitigating factor. See, *State v. Wolfe,* Stark App. No. 2008–CA–00064, 2009–Ohio–830.

**{¶20}** In *State v. Bleasdale*, 69 Ohio App.3d 68, 590 N.E.2d 43(1990) the defendant was given a suspended sentence, was placed on probation on the condition that he is accepted by, and successfully complete a specific drug program. The

defendant was ultimately terminated from the program after he was diagnosed as suffering from several mental disorders and the staff determined that it was not equipped to deal with the mental problems that the defendant exhibited. After a probable cause hearing, the trial court revoked the defendant's probation and reinstated his sentence of confinement. On appeal, the Eleventh District Court of Appeals determined that the trial court had abused its discretion in revoking the defendant's probation because the defendant had not willfully or intentionally violated the conditions of his probation. Rather, the court stated, the defendant had been cooperating with the program but was terminated "due to the program's inability to properly minister his case." *Id.* at 72.

**{¶21}** Crim. R. 32.3 does not require that a probation violation be willful. As the Eleventh District stated in *State v. Stockdale* (Sept. 26, 1997), 11th Dist. No. 96–L–172, "there is nothing in Crim. R. 32.3 ... that mandates that the state must introduce evidence that the probation violation was willful." *Accord*, *State v. Miller*, 6th Dist. No. F-05-016, 2006-Ohio-4810, at ¶ 15 ("There is no requirement that the state prove willfulness before the court can revoke a defendant's community control.") (citations omitted); *State v. Wolfson*, 4th Dist. No. 03CA25, 2004-Ohio-2750, at ¶ 12 ("the State only had to prove that Wolfson violated the terms of her community control sanctions, not that she had a mens rea of 'willfulness,' before the court could revoke Wolfson's community control sanctions"); *State v. Norris*, 5th Dist. No. 2010CA0070, 2010-Ohio-6007, ¶ 20.

**{¶22}** In the case at bar, the facts supporting the revocation of appellant's community control sanctions are clearly distinguishable from those in *Bleasdale.* In this

case, the court revoked Solomon's community control solely based on his voluntary conduct, not based on conditions over which he had no control.

**{¶23}** The only evidence that Solomon could not report to his probation officer due to his mental illness came from Solomon; no medical or other testimony was submitted to corroborate or substantiate the nature and extent of any disability.

**{¶24}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact-finder lost its way.'" *State v. Pallai*, 7th Dist. No. 07 MA 198, 2008–Ohio–6635, ¶ 31, quoting *State v. Woullard*, 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(1999).

**{¶25}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed .2d 646 (1983).

**{¶26}** The judge as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the [judge] may take note of the inconsistencies and resolve or discount them accordingly * * * such

inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig,* 10th Dist. No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens,* 10th Dist. No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the [judge] need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP–604, 2003–Ohio–958, ¶ 21, citing *State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. No. 02AP–1238, 2003–Ohio–2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

{¶27} In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland,* 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477–478. (Emphasis added).

**{¶28}** We agree that the trial judge should take into consideration all factors, including physical and mental examinations, in the reevaluation and reassessment of the correctness of the sentence upon a revocation of community control. See *State v. Qualls*, 50 Ohio App.3d 56, 552 N.E.2d 957(1988). However, Solomon's argument that it was unfair to not extend yet another attempt at treatment is without merit. The trial court has no such requirement imposed upon it. See *State v. Wolfe,* supra; *State v. Wheat,* Stark App. No. 2007 CA 00165, 2008–Ohio–671 at ¶ 21.

**{¶29}** The court, according to the record, considered Solomon's mental condition as a factor before imposing sentence.

**{¶30}** Solomon's sole assignment of error is overruled and the judgment of the Morrow County Court of Common Pleas is affirmed.

By Gwin, J.,

Delaney, P.J., and

Hoffman, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN

WSG:clw 0926

[Cite as *State v. Solomon*, 2012-Ohio-4884.]

IN THE COURT OF APPEALS FOR MORROW COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| WILLIAM SOLOMON III. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012-CA-7 |

For the reasons stated in our accompanying Memorandum-Opinion, Solomon's sole assignment of error is overruled and the judgment of the Morrow County Court of Common Pleas is affirmed.

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN